# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

Civil Case No. _____

UNITED STATES ex rel. ALBERT F. SISKA

Plaintiff

***FILED UNDER SEAL***

**JURY TRIAL DEMANDED**

vs.

WARD DIESEL FILTER SYSTEMS, Inc.,
        Defendant

## QUI TAM COMPLAINT

RELATOR, ALBERT F. ("TED") SISKA, brings this qui tam action in the name of the United States of America, by and through his attorneys, Shaheen & Gordon, P.A., and states as follows:

### *SUMMARY INTRODUCTION*

1. This is an action by Qui Tam Relator Albert F. ("Ted") Siska, on behalf of the United States, against the Defendant Ward Diesel Filter Systems, Inc., ("Ward") to recover penalties and damages arising from the false claims made by Ward in violation of the Federal False Claims Act, 31 U.S.C. §§ 3729 et seq., as amended.

2. The False Claims Act originally enacted in 1863 during the Civil War was substantially amended by the False Claims Amendments Act of 1986 and The Fraud Enforcement And Recovery Act of 2009. Congress enacted these amendments to enhance

the Government's ability to recover losses sustained as a result of fraud against the United States and to provide a private cause of action for the protection of employees who act in furtherance of the purposes of the Act. Congress acted after finding that fraud in federal programs and procurement is pervasive and that the False Claims Act, which Congress characterized as the primary tool for combating fraud in government contracting, was in need of modernization.

3. The Act generally provides that any person who knowingly submits a false or fraudulent claim to the Government for payment or approval is liable for a civil penalty of up to $11,000 for each such claim, plus three times the amount of the damages sustained by the Government, including attorneys' fees. The Act allows any person having information regarding a false or fraudulent claim against the Government to bring a private cause of action on behalf of the Government and to share in any recovery. The complaint is to be filed under seal for 60 days (without service on the Defendant during such 60-day period) to enable the Government (a) to conduct its own investigation without the Defendant's knowledge and (b) to determine whether to join the action.

4. Based on these provisions, the Relator seeks to recover damages and civil penalties arising from Defendants' presentation of false claims to the United States Government in connection with General Services Administration Federal Supply Schedule ("GSA FSS") Contract No. GS-07F-0246L between the Defendant Ward and the General Services Administration, an agency of the United States Government with headquarters in Washington, D.C.

## PARTIES

5. Realtor Albert F. ("Ted ") Siska ("Siska') is a citizen of the State of New Hampshire.

6. The Relator brings this action for violations of 31 U.S.C. §§ 3729 et seq. on behalf of himself and the United States Government pursuant to 31 U.S.C. §3730(b)(1). Realtor has knowledge of the false statements and/or claims presented by the Defendant Ward to the Federal Government as detailed herein.

7. Defendant Ward (Fed ID No 16-1578274; DUNS No 62-1109180) is a Pennsylvania corporation, wholly owned by a veiled parent Meier Diesel Filters, Inc., a New York corporation, and part of a group of companies including Ward Clean Air Products, LLC, and others, collectively known as Meier Industries, owned or controlled by John H. Meier, all with a usual place of business at 133 Philo Road, Elmira, New York, 14903.

SHAHEEN & GORDON, P.A. ATTORNEYS AT LAW
80 MERRIMACK STREET, MANCHESTER, NH 03101  603-669-8080

8. Ward does business in the State of New Hampshire and has sold and installed equipment in City of Franklin, N.H. and City of Concord, N.H. The United States of America, through its General Services Administration, has contracted with Defendant Ward for the purchase of the Defendant's "No Smoke" product.

9. This Complaint charges, inter alia, that the Defendant Ward illegally charged the Government making purchases through Ward's GSA FSS Contract a higher price per unit for its 'No Smoke" system as well as related products and services than it charged its open market customers, in violation of GSA's requirement that Ward sell to the Government at Ward's best price, i.e. "Better or Equal to their best Private Sector Customer."

## *JURISDICTION & VENUE*

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and 31 U.S.C. § 3732, which specifically confers jurisdiction on this Court for actions brought pursuant to §§ 3729 and 3730 of Title, 31, United States Code.

11. This Court has personal jurisdiction over the Defendant because Ward transacts business in the State of New Hampshire.

12. Venue is proper in this Court pursuant to 31 U.S.C. § 3732 (a) because Ward transacts business in the State of New Hampshire and did so at times relevant to this Complaint; and, as detailed below, Ward committed acts proscribed by 28 U.S.C. 3729 within the State of New Hampshire.

13. After filing this Complaint under seal, the Relator served a copy of same upon the United States, together with a written disclosure statement setting forth all material evidence and information he possesses, pursuant to the requirements of 31 U.S.C. § 3730 (b) (2).

14. The Relator has complied with all other conditions precedent to bringing this action.

15. The Relator is the original source of, and has direct and independent knowledge of, all publicly disclosed information on which any allegations herein might be deemed based and has voluntarily provided such information to agencies of the U.S. Government before filing this action.

16. Specific disclosures include: (I) letters and evidence of violations to James Dowd and David Damico, Special Agents for Office of Inspector General, U.S.

SHAHEEN & GORDON, P.A. ATTORNEYS AT LAW
80 MERRIMACK STREET, MANCHESTER, NH 03101   603-669-8080

General Services Administration, Boston, MA June 6, 2009, June 14, 2009, June 15, 2009, June 16, 2009, June 17, 2009, June 22, 2009, June 23, 2009, June 28, 2009, July 6, 2009, August 7, 2009, August 8, 2009, August 14, 2009, August 15, 2009, August 17, 2009, August 24, 2009, September 18, 2009, and November 25, 2009.

## FACTUAL ALLEGATIONS

17. In anticipation of apparatus manufacturer Ward LaFrance Truck Corp. filing bankruptcy July 28, 1979, one time Executive Vice President of Ward LaFrance and former president of American LaFrance, Henry E. Kaeser with John Wittekamp, a former Ingersoll Rand executive, formed a new company Ward 79, Ltd., occupied the premises in 1980 and continued the operation in the Village of Elmira Heights, NY. In 1987, Ward 79 began manufacture of its Ward "No Smoke" diesel exhaust infuser; and Mr. Kaeser filed for the patent December 24, 1987. When takeover company Ward 79 went bankrupt in 1989, Mr. Kaeser formed veiled parent Kaeser Diesel Filter Company, and continued to manufacture the Ward "No Smoke" system d/b/a Ward Diesel Filter Systems, Inc., incorporated in Pennsylvania January 17, 1989. Shortly thereafter, Mr. Kaeser obtained patent on the infusion controller February 14, 1989 (US Patent 4,803,838). The Ward 79 manufacturing plant in Elmira Heights was abandoned in April of 1982, and in November of 2000 it was named an EPA Superfund site.

18. After Mr. Kaeser died, John H. Meier acquired Kaeser's company and formed Meier Diesel Filters, Inc., on November 30, 1999, to continue to manufacture, distribute, and install the Ward "No Smoke" system first in Elmira Heights, NY, and later in Horseheads, NY, and finally in Elmira, NY, doing business as Ward Diesel Filter Systems, Inc., Ward Diesel Filter Systems, and sometimes Meier Diesel Filter, Inc.

19. Ward's only product is the "No Smoke" on-board diesel exhaust filter system, consisting of a ceramic filter, diverter valve, and timer-control manufactured in accordance with Kaeser's Patent 4,803,838. Its bid proposals for potential sales customarily include a copy of Kaeser's Patent and a "disclaimer" advising "No other company or individual has been licensed to manufacture or market this proprietary system." The "No Smoke" system (SIN No. 567-99) is its lowest priced model. Ward offers no more basic nor more economical model.

20. "Over the past 20 years, Ward Diesel Filter Systems has installed literally thousands of "No Smoke" systems on fire apparatus throughout the United States and across the world." *Ward's Bid for Diesel Exhaust Filter Systems to Belvidere, Illinois Bid Opening April 20, 2009.*

21. Growth of the on-board diesel emissions control industry for fire service vehicles, which Ward dominates, was spurred by increasing public awareness that exposure to diesel particulate matter may increase the risk of cancer in humans.

22. In 1988, the International Agency for Research on Cancer (IARC) concluded that diesel particulate is probably carcinogenic to humans. In August 1998, California Air Resources Board (CARB) identified PM emissions from diesel-fueled engines as a toxic air contaminant. In November 2000, US Environmental Protection Agency (EPA) declared diesel particulate matter a "likely human carcinogen".

23. Sales of diesel emissions controls to the fire service soared dramatically in aftermath of the terrorist attacks on the United States on "September 11th." U.S. Department of Homeland Security, created November 25, 2002, absorbed by the existing Federal Emergency Management Agency. Through its United States Fire Administration (USFA), FEMA initiated the Assistance to Firefighters Grant Program awarding federal grants to state, county, and municipal fire departments in fulfilling objectives delineated by Congress in the FY2001 Defense Authorization Bill (Public Law 106-398) that amended Section 33 of the Federal Fire Prevention and Control Act of 1974 (15 U.S.C. § 2201 et seq.)

24. FEMA Fire Grant funding, which makes purchase of on-board exhaust filter systems attainable by local fire departments, is not available to federal government fire service, particularly Department of Defense, and its three branches of our armed services (Air Force, Navy, and Army). Military agencies may solicit for competitive bids on the open market; or, in the alternative, they may purchase from pre-approved suppliers who are FSS Multiple Award Schedule Contractors through the US General Services Administration (GSA). The GSA publishes its Federal Supply Schedule of Prices for approved products and makes them available to Government agencies for purchase.

25. General Services Administration implemented the Federal Supply Schedule (FSS) in 1949 to enable government agencies to purchase a wide array of products and services from commercial vendors to provide "a simplified method of acquiring varying quantities of a wide range of commercially available goods and services, such as office furniture and supplies, personal computers, scientific equipment, library services, network support, and laboratory testing services." *Contract Management: Opportunities, General Accounting Office GAO-05-229 (February 2005).*

26. GSA Contractors are privileged to receive awards, contracts, and purchase orders from agencies and departments of US government, which can place orders through GSA Advantage and E-Buy on-line shopping programs without the burden of open, competitive bidding, detailed specifications, or time-consuming bid solicitation and

evaluation processes. In exchange for the privilege of being listed as an approved vendor, each GSA Contractor promises, as condition of being awarded its contract, that its FSS pricelist constitutes its best, most-favored customer prices. The duty to sell goods and services through the GSA for the best price is on-going for the life of the contract.

27. To gain better access to the government and military market, March 23, 2001, Ward applied for and was subsequently awarded GSA FSS Contract GS-07F-0246L on June 7, 2001. Ward's Contract was renewed effective June 14, 2006 and will remain in force through June 14, 2011.

28. Since the award of its GSA FSS Contract, Ward has made sales directly to the military and other federal agencies through GSA/FSS and has presented corresponding claims for payment to said agencies.

29 In the fire service, Ward has gained a monopoly on the sale of on-board diesel exhaust filter systems through heavy saturation advertising, predatory pricing, and other unscrupulous means, including collusive specifications, fake bids from dummy companies, and creation of false, misleading environmental health studies.

30. Ward routinely furnishes prospective customers with a complete bid specification and solicitation package, through which the technical specifications and terms and conditions are rigged to establish "No Smoke" as the standard of quality, and the peculiar ways Ward does business as the only acceptable conduct, in order to unfairly limit, preclude and restrain free and open competition, in blatant violation of FEMA Guidelines, Federal Acquisition Regulations, and OMB Circular A-110.

31. When a prospective customer requires more than one bid, Ward will supply fake bids from fictional companies, such as U.S. Diesel Filter Company and Ward Diesel of Texas, signed by John White Adams. Mr. Adams is a registered Professional Engineer from the State of Texas, who has also supplied Ward with suspicious and misleading scientific test data about the effectiveness of its "No Smoke" system. He does business as "Phase One Environmental". The address on the letterhead for Phase One Environmental is the physical address of Cowboy Outfitters, a western attire store in Highlands, Texas, owned by Mr. Adams.

32. To state and local government customers, Ward routinely, systematically, and repeatedly undercuts its best, most favored customer pricing to the federal government, established in GS-07F-0246L, in order to restrain free, open competition and maintain its monopoly of the fire service market. In fact, the federal government has become Ward's least favored customer inasmuch as federal agencies pay more for its "No Smoke" product than do Ward's state and local government customers.

Shaheen & Gordon, P.A. Attorneys at Law
80 Merrimack Street, Manchester, NH 03101  603-669-8080

33. Every Ward customer which seeks free open market competitive bids for on-board filter systems, as required by the FEMA Grant Guidelines and OMB Circular A-110, pays less--- as much as 30 percent less--- than the Federal Supply Schedule price listing for Ward's "No Smoke" product.

34. Every Government customer of Ward that purchases Ward's "No Smoke" system, and related filters, filter cleaning and service, through the GSA Advantage or E-Buy, including our military, pays an inflated price over what Ward customarily charges other customers.

### *GSA FSS Contract GS-07F-0246L*

35. In Ward's application for a GSA FSS Contract, dated March 23, 2001, Ward falsely certified that it was not owned or controlled by a common parent, when in fact it is and always has been owned and controlled by Meier Diesel Filter, Inc., and Meier Industries.

36. As part of Ward's application for a GSA FSS Contract, Ward would have been provided the contract proposal form from the GSA that included and incorporated the following FAR (Federal Acquisition Regulations) rules, clauses and other mandatory provisions, including the Price Reduction Clause:

   1) 48 C.F.R. § 552.212-1. Paragraph (g) of this FAR provision stated that it was the government's intent to evaluate offers and award a contract without discussions with offerors.

   2) 48 C.F.R. § 552.215-72 Price Adjustment —Failure to Provide Accurate Information. Paragraphs (a) and (e) of this provision provided that the government could reduce the price of the contract or terminate it if the contractor failed to provide information required by the solicitation/contract or otherwise requested by the Government or failed to submit information that was current, accurate, and complete.

   3) 48 C.F.R. § 552.238-75 Price Reductions. Paragraphs (a), (b) and (c) of this provision provided the following:

   (a) Before award of a contract, the Contracting Officer and the Offeror will agree upon (1) the customer (or category of customers) which will be the basis of award, and (2) the Government's price or discount relationship to the identified customer (or category of customers). This relationship shall be maintained throughout the contract period. Any change in the

7

      Contractor's commercial pricing or discount arrangement applicable to the identified customer (or category of customers) which disturbs this relationship shall constitute a price reduction.

  (b) During the contract period, the Contractor shall report to the Contracting Officer all price reductions to the customer (or category of customers) that was the basis of award. The Contractor's report shall include an explanation of the conditions under which the reductions were made.

  (c) (1) A price reduction shall apply to purchases under this contract if, after the date negotiations conclude, the Contractor—

    (i) Revises the commercial catalog, price list, schedule or other document upon which contract award was predicated to reduce prices;

    (ii) Grants more favorable discounts or terms and conditions than those contained in the commercial catalog, price list, schedule or other documents upon which contract award was predicated; or

    (iii) Grants special discounts to the customer (or category of customers) that formed the basis of award, and the change disturbs the price/discount relationship of the Government to the customer (or category of customers) that was the basis of award.

37. Ward falsely certified on Attachment A Commercial Sales Practices Format at Question 3 that the discounts and concessions offered the Government were equal to or better than its best price (discount and concessions in any combination) offered to any customer acquiring the same items. The term "Customer" is defined to include any state or local government.

38. During initial price negotiations in 2001, Ward failed to disclose its actual best price. Ward had charged the City of Indianapolis and City of Norfolk $8,108 per unit, 21% less than the price set in Ward's GSA FSS Price listing. Ward also did not disclose its best price to the GSA at the time of its renewal application in 2006. At the time of Ward's renewal application, Ward had charged the City of

Oakland $7,495 each for 5 or more units, 15% less than the Price listing set by its renewal Contract. Ward may have boasted that it "had diversified experience with thousands of systems operating successfully, country wide" ( as it had boasted in a proposal to the Town of Milford, MA, in May 2000), but it did not disclose to the GSA that it had sold all of those systems at prices less than what was later set in Ward's GSA FSS Price listing.

39. In obtaining the GSA contract, accurate and complete "Most Favored Customer" pricing information was required to be disclosed by Ward pursuant to GSA policy, the very terms of the written contract and duly noticed and promulgated administrative rules and regulations, all of which Ward's president, John Meier acknowledged knowing in Ward's application for a GSA Contract. Instead, Ward submitted false pricing information and falsely disclosed that the prices offered through the GSA were "equal to or better" than the "best price" offered to "any" customer.

40. Also, after Ward was awarded its GSA Contract, Ward sold its "No Smoke" product to state and local government customers at prices less than its published price in the Federal Supply Schedule. Ward's failure to report the pricing changes to the GSA is fraud pursuant to Federal Acquisition Regulation 552.216-70. Each time a government agency purchased an item for which it has not received the best price and Ward then submitted to the federal agency its invoice for payment, Ward submitted a false claim for payment. As a result, the Federal Government has been damaged at least in the amount of the difference between the GSA FSS price and the price paid by the non-federal government customer for each and every sale Ward made through the GSA since the inception of its GSA FSS Contract.

41. Ward violated the terms of its GSA FSS Contract and Federal Acquisition Regulations within two weeks of the date of its original GSA contract (undercutting the GSA Contract in a sale to City of Concord, NH) and within four days of the renewal of its GSA Contract in 2006 (undercutting the GSA Contract in a sale to City of Eureka, CA).

42. For each false claim submitted to the Government is entitled to statutory penalties of up to $11,000.

43. Ward's FSS pricelist in its GSA Contract is as follows:

| Number of Units | Price per Unit |
|---|---|
| Qty 1 | $ 10,037.73 |
| Qty 2 | 9,444.31 |

```
Qty 3                    9,242.81
Qty 4                    9,041.31
Qty 5 – 99,999,999       8,739.06
```

44. At its inflated FSS pricelist, Ward has sold over 500 units directly to the armed services, pursuant to no fewer than 75 supply/delivery contracts secured through the auspices of the GSA in the last 6 years. With reference to each of these contracts, a false claim for payment was knowingly presented by Ward to the Government.

### Sales

45. A summary of reported annual sales to the military is available to the public on the website Federal Procurement Data System www.fpds.gov. According to that source of public information, Ward's direct sales to the United States armed services at inflated FSS pricelist under GSA FSS Contract GS-07F-0246L were as of December 31, 2009, to be at least 500 'No Smoke" units sold in one hundred eleven (111) military sales transactions US Air Force (46); US Navy (30); US Army (29); Fed Acquisition Service FSA (5) and National Park Service (1). Each of said sales generated a claim for payment, which, in the circumstances, constituted a false claim. Each unit sold represented an overcharge to the Government of approximately $2,000 per unit when measured against Ward's true most favored customer prices.

46. Ward's largest customer by far is the United States Department of Defense. Total sales reported have been $4,236.458 under its GSA FSS Contract.Ward's sales to our military forces between dates X and Y were: US Air Force $2,285,848; US Navy $1,010,168; US Army $902,638; Fed Acquisition Center (for USAF) $19,056; and National Park Service $18,748. Each such sale of Ward's "No Smoke" product was in violation of the terms of its GSA FSS Contract and thus included a false claim for payment to the U.S. Government.

47. For quantity of one unit, Ward's true most favored customer pricing is $6,974 (more than 30% less than the FSS lowest unit price) as established by a sale by Ward to City of Lancaster, OH, *P.O. # RC-17167, dated October 26, 2007.*

48. For quantity of 5 or more units, Ward's true most favored customer pricing is $6,700 (more than 25% less than the FSS lowest unit price) as established by a sale by Ward to City of Springfield, OH, dated November 12, 2007. *Springfield Ordinance No. 07-343 Procurement File # 07-171.*

Shaheen & Gordon, P.A. Attorneys at Law
80 Merrimack Street, Manchester, NH 03101  603-669-8080

49. Among sales known and documented to have occurred undercutting the Government's most favored FSS unit pricing systematically, and in repeated pattern, during life of the GSA Contract are the following: Blue Ash, OH ($8,408.), Franklin, NH ($8,408.), Concord, NH ($8,408.), Sacramento, CA ($7,128.), Indianapolis, IN ($8,108.), Oakland, CA ($7,495.), Eureka, CA ($8,408.), Wilkes-Barre, PA ($8,408.), Freeport, NY ($8,574.), Lynbrook, NY ($6,974.), Somonauk, IL ($8,674.), Melbourne, FL ($8,674.), Elmira, NY ($7,926.), Lakewood, OH ($7,930.), Steamboat Springs, CO ($8,674.), Jacksonville, IL ($8,318.), Weaverville, CA ($7,958.), Bardstown, KY ($8,125.), Silver Lake, NY ($8,574.), Colchester, CT ($8,574.), Sioux City, IA ($7,920). See Exhibit A attached hereto.

50. None of these price reductions were ever passed on to GSA customers; nor were they reported to GSA's contracting officer as required by the terms of Ward's GSA Contract.

51. As for military sales, which are publicly disclosed and available on the internet, they alone represent over one hundred violations of the False Claims Act and constituted overcharges to the government of 30% higher than Ward's true most favored customer prices, amounting to over $1,270,937.

52. Prices Ward charges local fire departments, making purchases outside GSA Advantage or E-Buy, are always lower than FSS prices, regardless of quantity units, or distance of travel, or even when it is an obvious one time sale.

53. Undercutting of the Government's best price is a pattern of racketeering and corruption, which has occurred systematically and repeatedly throughout the life of Ward's original GSA FSS Contract issued on June 7, 2001, and its renewal contract issued on June 14, 2006.

54. From 2001 through to the present, the Defendant Ward knowingly has submitted false claims for payment to the United States, as set forth above, in violation of 31 U.S.C. § 3729(a) (1). Additionally, the Defendant has knowingly made and used false records or statements to get a false or fraudulent claim paid by the United States, in violation of 31 U.S.C. § 3729(a)(2). Further, the Defendant has knowingly made and used false records or statements to conceal, avoid, or decrease obligations to pay money to the United States in violation of 31 U.S.C. § 3729(a)(7). Finally, the Defendant has conspired with its corporate alter ego entities to defraud the Government by getting false or fraudulent claims allowed or paid by the United States, in violation of 31 U.S.C. § 3729(a)(3). As a result of such violations of the False Claims Act, the Defendant has received payments from the United States Treasury. All of this has resulted in damage to the United States in excess of a $1 million. See Exhibit B attached hereto.

SHAHEEN & GORDON, P.A.  ATTORNEYS AT LAW
80 MERRIMACK STREET, MANCHESTER, NH 03101  603-669-8080

## COUNT 1: Violations of the False Claims Act

Each of the foregoing allegations is re-alleged and incorporated hereby.

55. This is a claim for treble damages and forfeitures under the False Claims Act, 31 U.S.C. §§3729-32.

56. By virtue of the acts described above, the Defendant Ward knowingly caused to be presented to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval.

57. By virtue of the acts described above, the Defendant knowingly caused to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the Government.

58. The United States, unaware of the falsity of the records, statements and/or claims made by Defendant, and in reliance on the accuracy thereof, paid for aforementioned false claims because the Defendant intentionally failed to monitor the contract for price reductions and failed to pass on appropriate discounts to the Federal Government and thus caused the Federal Government to pay inflated prices.

59. By virtue of the acts described above, the Defendant knowingly defrauded the United States by failing to adhere to the GSA Contract No. GS-07F-0246L price reduction clauses and by receiving inflated payment for goods from agencies of the U.S. Government.

60. Defendant Ward authorized and/or ratified all the violations of the False Claims Act committed by its various officers, agents, and employees and otherwise conspired with them and its corporate parents to defraud the Government by getting a false or fraudulent claim allowed or paid.

61. The United States Government, including our armed forces, has been severely damaged as the result of Defendant's actions including its failure to adhere to the price reduction clauses in GSA FSS Contract No. GS-07F-0246L. The United States Government has been severely damaged by the Defendant's violations of the False Claims Act.

62. As set forth in the preceding paragraphs, Defendant violated 31 U.S.C. §3729 et seq. and has thereby damaged and continues to damage the United States Government by its actions in an amount to be determined at trial.

63. Defendant Ward, by and through its alter ego identities, authorized and/or ratified all the violations of the False Claims Act committed by its various officers, agents, and employees. The United States Government, including our armed forces, has been damaged as a result of the Defendant Ward's violations of the False Claims Act.

The Relator requests a JURY TRIAL.

WHEREFORE, Realtor prays for judgment against the Defendants as follows:

a. That the Defendant be ordered to cease and desist from violating the price reduction provisions of GSA FSS Contract No. GS-07F-0246L;

b. That the Defendant be ordered to cease and desist from violating 31 U.S.C. §3729 et seq;

c. That this Court enter judgment against the Defendant in an amount equal to three times the amount of damages the United States Government has sustained because of Defendant's actions, plus a civil penalty of not less than $5,000 and not more than $11,000 for each violation of 31 U.S.C. §3729 et seq, for all false records, statements, certifications and claims submitted to the United States;

d. That Realtor be awarded the maximum amount allowed pursuant to §3730(d) of the False Claims Act;

e. That Realtor be awarded all costs and expenses of this action, including attorneys' fees; and

f. That Realtor and the U.S. Government recovers such other relief as the Court deems just and proper.

SHAHEEN & GORDON, P.A. ATTORNEYS AT LAW
80 MERRIMACK STREET, MANCHESTER, NH 03101   603-669-8080

Respectfully submitted,

Albert F. ("Ted") Siska
Qui Tam Realtor

By and through his attorneys,

SHAHEEN & GORDON, P.A.

Dated: 3/22/10   By:   /s/ Francis G. Murphy
Francis G. Murphy #1840
80 Merrimack Street
Manchester, NH 03101
(603) 669-8080